UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOHN McKNIGHT WADE,                )
                                   )    2:  13-cv-00755-PK
            Petitioner,            )
                                   )
      v.                           )
                                   )    FINDINGS AND RECOMMENDATION
MARK NOOTH, Superintendent,        )
Snake River Correctional           )
Institution,                       )
                                   )
            Respondent.            )


      Kristina Hellman
      Assistant Federal Public Defender
      101 SW Main Street, Suite 1700
      Portland, Oregon  97204

            Attorney for Petitioner

      Ellen F. Rosenblum
      Attorney General
      Samuel A. Kubernick
      Assistant Attorney General
      Department of Justice
      1162 Court Street NE
      Salem, Oregon 97301

            Attorneys for Respondent


      1 - FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge.

Petitioner John McKnight Wade brings this habeas corpus action pursuant to 28 U.S.C. § 2254 and challenges his convictions and sentence for attempted aggravated murder, attempted assault, assault, unlawful use of a weapon, burglary and robbery.  For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus [19] should be denied, and Judgment should be entered dismissing this action with prejudice.

## PROCEDURAL BACKGROUND

On February 11, 2003, the Multnomah County Grand Jury returned a re-indictment charging Wade with four counts of Attempted Aggravated Murder with a Firearm, one count of Attempted Assault in the First Degree with a Firearm, one count of Assault in the Second Degree with a Firearm, one count of Assault in the Third Degree with a Firearm, one count of Unlawful Use of a Weapon with a Firearm, two counts of Burglary in the First Degree with a Firearm, two counts of Robbery in the First Degree with a Firearm, two counts of Robbery in the Second Degree with a Firearm, and one count of Felon in Possession of a Firearm.  Respondent's Exhibit 103.  A jury found him guilty on all counts, and, through a combination of consecutive, concurrent, and merged sentences, the sentencing court ultimately imposed a sentence totaling 310 months. Respondent's Exhibit 101.

2 - FINDINGS AND RECOMMENDATION

Wade directly appealed his convictions and sentence. The Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review. *State v. Wade*, 213 Or. App. 241, 160 P.3d 1039 (2007), *rev. denied* 343 Or. 224, 168 P.3d 1155 (2007); Respondent's Exhibits 104-109.

Wade next filed for post-conviction relief ("PCR") in state court. The PCR trial court denied relief on his PCR Petition. *Wade v. Belleque*, Marion County Circuit Court Case No. 07C-22300. On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Wade v. Premo*, 250 Or. App. 145, 281 P.3d 685 (2012), *rev. denied* 352 Or. 565, 291 P.3d 737 (2012); Respondent's Exhibits 142-146.

On May 3, 2013, Wade filed this action. His claims for relief as set forth in his Amended Petition [19] are as follows:

Ground One.   The state trial court violated the petitioner's right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution by admitting the co-defendant's statements made to detectives, even though petitioner did not have an opportunity to cross examine the co-defendant about those statements.

Ground Two.   Mr. Wade was denied effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights because his attorney failed to:

1.   Present expert opinion testimony from a criminalist from which the jury could reasonably infer that petitioner had not fired a gun a Korick Sleeper;

2.   Object to particular testimony of Anthony Christensen on the basis that it was irrelevant under OEC 401 and 403;

3 - FINDINGS AND RECOMMENDATION

3.   Object under OEC 401 and 403, then move to strike testimony of prosecution witness Micah Griggs, that he believed petitioner intended to commit a robbery when he heard that petitioner intended to "commit" or "hit a lick";

4.   Move to sever petitioner's trial from that of co-defendant Handy;

5.   Object to the introduction of out-of-court statements purportedly made by co-defendant Handy on the grounds that they were hearsay and that their introduction violated petitioner's confrontation rights;

6.   Object to the introduction of co-defendant Handy's out-of-court testimonial statements to Detective Andrews in violation of petitioner's confrontation rights.

Respondent asks the Court to deny relief on the Amended Petition because: (1) Wade does not provide argument for the claims set forth at Ground Two, Subparts 2 through 6, and, therefore, he has not sustained his burden of proof on these claims; (2) to the extent the Oregon Court of Appeals reached the merits of Wade's Ground One claim, it was denied in a state court decision entitled to deference--otherwise the claim is defaulted and the default is not excused; and (3) Ground Two, Subpart 1 was denied in a state court decision entitled to deference.

## DISCUSSION

I.   **Unargued Claims**

With the exception of Ground One and Ground Two, Subpart 1, Wade does not provide argument to support the merits of his remaining claims. Instead he "submits the remainder of his claims

for this Court's consideration on the existing record." Brief in Support [38], p. 8.

On federal habeas review, Wade must show that the state court determination denying his claims was contrary to or involved an unreasonable application of federal law as established by Supreme Court precedent. 28 U.S.C. § 2254(d). The Court has reviewed Wade's unargued claims on the existing record and determined that they do not entitle him to relief. Accordingly, by not advancing these claims in his supporting memorandum, Wade has failed to meet the burden of proof for habeas relief under § 2254(d) and relief on these claims must be denied.

## II.  Merits

### A.  Standards

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and Wade bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly
established precedent if the state court applies a rule that
contradicts the governing law set forth in [the Supreme Court's]
cases" or "if the state court confronts a set of facts that are
materially indistinguishable from a decision of [the Supreme] Court
and nevertheless arrives at a result different from [that]
precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
Under the "unreasonable application" clause, a federal habeas court
may grant relief "if the state court identifies the correct legal
principle from [the Supreme Court's] decisions, but unreasonably
applies that principle to the facts of the prisoner's case."
*Id.* at 413.   The "unreasonable application" clause requires the
state court decision to be more than incorrect or erroneous.
*Id.* at 410.   The state court's application of clearly established
law must be objectively unreasonable.   *Id.* at 409.

The Supreme Court has established a two-part test to determine
whether a petitioner has received ineffective assistance of
counsel.   First, the petitioner must show that his lawyer's
performance fell below an objective standard of reasonableness.
*Strickland v. Washington*, 466 U.S. 668, 686-687 (1984).   Due to the
difficulties in evaluating counsel's performance, courts must
indulge a strong presumption that the conduct falls within the
"wide range of reasonable professional assistance."   *Id.* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense.  The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id.* at 696.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996's ("AEDPA") deferential standard of review, the key question in analyzing an ineffective assistance of counsel claim brought by a state prisoner is whether the state court's application of *Strickland* was unreasonable. *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).  "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard ... A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*  AEDPA requires a "doubly deferential" review of a state prisoner's ineffective assistance of counsel claim.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1410-11 (2011)(citation omitted).  The federal habeas court must show deference both to the state court which previously reviewed the claim, and also to trial counsel him or herself.

///

///

7 - FINDINGS AND RECOMMENDATION

B.    **Analysis**

1.    **Trial Court Violated Wade's Right to Confrontation as Guaranteed by the Sixth Amendment when it Admitted Co-Defendant's Statements made to Detectives, even though Wade did not have an Opportunity to Cross Examine Co-Defendant about those Statements (Ground One)**

Wade contends his co-defendant's statements were testimonial, and, therefore, their admission at his trial through a detective violated Wade's confrontation rights under the Sixth Amendment. He further argues the violation was not harmless because co-defendant's statements were important to the prosecution's case in that they:  (1) supported the prosecution's theory of the case; (2) corroborated important portions of two witnesses' (the victims') version of events--witnesses whose credibility was otherwise suspect; and (3) directly countered Wade's version of events.  Accordingly, Wade argues admission of co-defendant's statements through the detective had a substantial and injurious effect on the jury's verdict and the Oregon Court of Appeals' denial of this claim was contrary to and an unreasonable application of both *Crawford v. Washington*, 541 U.S. 36 (2004) and *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Recognizing that in light of *Smith v. Oregon Bd. of Parole and Post-Prison Supervision*, 736 F.3d 857 (9th Cir. 2013) the Oregon Court of Appeals' decision here could be considered a denial on the merits, respondent argues that even assuming that court denied the claim on the basis any Sixth Amendment violation was harmless, such

finding was not objectively unreasonable and is entitled to deference by this Court.

Specifically, respondent maintains the following relevant factors support the conclusion that any Confrontation Clause violation was harmless. First, with regard to importance of the testimony, the State argues: (1) the testimony at issue was a small part of the detective's testimony, taking up less than one page of transcript in a multi-day trial; (2) the jury heard about the co-defendant's involvement in the crime and it was evident the statement attributed to him contained self-serving assertions; and (3) the prosecution did not emphasize the statement in either its closing or rebuttal closing. In addition, the State argues the statements were merely cumulative of other properly admitted evidence, including testimony from other witnesses as to Wade's role in the crimes and the fact that he possessed and shot the gun. Similarly, the State argues the co-defendant's statements were corroborated by that same testimony. Finally, with regard to the overall strength of the prosecution's case, respondent points to: (1) the testimony of other witnesses who testified in detail about Wade's role in the crimes and the facts that he possessed and shot the gun; (2) the testimony of other witnesses who confirmed Wade possessed a gun matching the description of the one used in the crime; and (3) the fact Wade's explanation that the gun accidently discharged was not credible.

9 - FINDINGS AND RECOMMENDATION

Assuming as the State does that the Oregon Court of Appeals found constitutional error based on a Confrontation Clause violation but deemed it harmless, this Court reviews that determination under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The right to confront witnesses, guaranteed by the Sixth and Fourteenth Amendments, includes the right to cross-examine adverse witnesses to attack their general credibility or show possible bias or self interest. *Olden v. Kentucky*, 488 U.S. 227, 231 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986). A Confrontation Clause violation occurs where the defendant is prevented from investigating "a prototypical form of bias" and "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680.

Even where constitutional error is found, however, "in § 2254 proceedings a court must [also] assess the prejudicial impact of constitutional error" under the *Brecht* standard. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007)(citing *Brecht*, 507 U.S. 619). This Court is instructed to "apply the *Brecht* test without regard for the state court's harmlessness determination." *Ayala v. Wong*, ___ F.3d ___, 2014 WL 707162, *13 (9th Cir. 2014)(citing *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010)). Thus, a federal habeas court assesses harmlessness under the *Brecht* standard and

"need not conduct an analysis under AEDPA of whether the state court's harmlessness determination on direct review ... was contrary to or an unreasonable application of clearly established federal law." *See Merolillo v. Yates*, 663 F.3d 444, 455 (9th Cir. 2011), cert. denied, 133 S.Ct. 102 (2012). Accordingly, habeas relief is not warranted unless the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. 623; *see also Merolillo*, 663 F.3d at 455.

To guide an analysis of "substantial and injurious effect," the Court applies the five non-exclusive factors set out in *Van Arsdall*. Ultimately, the question is whether "assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 684. Relevant factors include: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent cross examination was otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id*.

Having carefully reviewed relevant portions of the transcript, the Court finds as a preliminary matter that the prosecution introduced co-defendant's statements primarily to support its case

against co-defendant, not Wade.  To the extent co-defendant's statements favored the prosecution's case against Wade, the facts revealed in co-defendant's assertions were well established from other witness testimony.  For example, while co-defendant's statements placed Wade at the scene with a gun, other witnesses, able to describe Wade's very distinctive appearance, identified him as having been at the scene with a gun.  Moreover, with regard to the *Van Arsdall* factors, respondent's arguments are well taken.  The Court concludes:  co-defendant's statements were not a significantly important part of its case against Wade; they were cumulative; to the extent they were contradicted by other testimony, it is apparent co-defendant was giving a self-serving account of events such as denying knowing that Wade had a gun when they entered the apartment and denying that co-defendant took any property[1]; to the extent they were corroborated by the victims' testimony, Wade's counsel had ample opportunity to challenge the credibility of the victims' statements and did; and the prosecution's overall case against Wade was strong.

Therefore, based on the foregoing, the Court concludes that any violation of Wade's Confrontation Clause rights did not have a substantial and injurious effect or influence on the jury's verdict

---

[1] Moreover, co-defendant's statements contained facts helpful to Wade, including co-defendant's assertion that he only heard one gun shot.

and any error was harmless beyond a reasonable doubt.  Accordingly,
Wade is not entitled to relief on this claim.

> 2.  **Wade's Sixth Amendment Right to Effective Assistance of**
>     **Counsel was Violated when Trial Counsel Failed to Utilize**
>     **a Criminalist at Trial (Ground Two, Subpart 1)**

According to Wade, there was no physical evidence supporting
the attempted aggravated murder charge pertaining to Korick Sleeper
and the prosecution's case on this count relied solely on Ms.
Sleeper's testimony that Wade fired his gun at her and she felt the
bullet fly past her and Charles Carrera's testimony that he had
heard two shots--the second one after Wade left the apartment.
Wade maintains that his counsel could have hired a criminalist to
give expert testify at trial that had Wade shot at Ms. Sleeper as
she described, investigators would have recovered physical evidence
of the shot.  Wade insists that with such testimony the outcome of
his trial as to this attempted aggravated murder charge would have
been different.  Wade also asserts that he asked his attorney to
retain an expert to testify about the alleged second shot at Ms.
Sleeper, but counsel declined to do so.

In denying Wade's claim, the PCR trial court made the
following pertinent findings of fact:

> 1.  One issue concerns the Affidavit of Bart Reid and
>     his proposed testimony if he had been called as a
>     witness by Petitioner's counsel.  After reviewing
>     the testimony of all the witnesses, the Court finds
>     the Petitioner has failed to prove by a
>     preponderance of the evidence that the proposed
>     testimony of Bart Reid would have assisted
>     Petitioner's trial evidence in any significant

13 - FINDINGS AND RECOMMENDATION

          manner or would have impacted or changed the
verdict at trial.

2.    Trial counsel made a deliberate, strategic decision
in consultation with petitioner to not use a
criminalist expert. Petitioner agreed on trial
counsel's strategy. That tactical decision was
reasonable under the facts and circumstances, and
did not rise to the level of ineffective assistance
of counsel. The victim could not testify to the
exact angle at which the shot was fired, and the
jury knew that the detectives did not locate the
fired bullet or any fragments.

Respondent's Exhibit 140, p. 4.

During his PCR trial, Wade's counsel argued that based on

evidence introduced at trial concerning the positions of Wade and

Ms. Sleeper and the angles of the shot, the trajectory of the

bullet had been established. Based on this trajectory, an expert

could have testified that had the second shot been fired there

would have been physical evidence of it. In support of this

argument, Wade introduced an affidavit by Forensic Scientist Bart

E. Reid wherein Reid averred that had a bullet been fired at Ms.

Sleeper "in a manner consistent with her testimony and descriptions

of that event to investigating officers, it is very likely that

such bullet would have struck the ground in the [gravel] parking

lot directly behind her." Moreover, Reid stated had the bullet

struck the parking lot, it would have left a "distinctive furrow"

in the gravel and that in his opinion the lack of any evidence of

gunshot under these circumstances leads him to conclude a bullet

was not fired at Ms. Sleeper as described in her testimony.

Respondent's Exhibit 121, p. 5.

    14 - FINDINGS AND RECOMMENDATION

In response, however, the State argued:  (1) an expert witness by the defense at trial would not have been able to rebut the testimony of the two officers who testified about their expectations about being able to recover evidence of the second shot and that they performed a search, but were unable to find anything; (2) "it was clear that the victim could not give an exact angle that Mr. Wade was holding the firearm when he fired the shot at her"; (3) the officers testified that the angles were not exact enough to involve the Oregon State Police or to justify use of their advanced technologies and specialists to locate evidence of the shot; (4) at least two witnesses heard the second shot; and (5) the jury knew that no evidence of a second bullet was ever recovered, but that law enforcement testified that they would not expect it to be recovered.  Respondent's Exhibit 138, pp. 19-20.

In addition to the parties' briefs and arguments as summarized above and the Reid affidavit, the PCR court had before it an affidavit from Wade's trial counsel wherein counsel specifically addressed his reasons for not hiring a criminalist:

> 2.   I did not retain a criminalist in this matter because I did not believe strategically or tactically that an "expert criminalist" could be of much benefit or help to our case; I discussed this issue specifically with Mr. Wade who agreed an expert was not likely to assist the defense in any meaningful way.  Mr. Wade and I had multiple conversations about our trial strategies and he was always involved in the process of my thinking and trial preparation.
>
> At the time of trial, the evidence presented and witness testimony indicated the fired bullet likely

15 - FINDINGS AND RECOMMENDATION

hit a gravel area, shattered, and then ricocheted away into an unknown direction. My past experience, and common sense, indicated that I would not be able to find a respected, persuasive criminalist to testify a bullet definitely should have been recovered under those circumstances. In fact, trying to locate such a bullet would have been very difficult and our own "expert" could have been used against our ultimate defense. Strategically, I believed it was smarter and better to "argue" the issue as a failure of the state to produce the evidence.

Without absolute, unequivocal testimony as to the origin, direction, and distance of flight, the criminalist's testimony would have provided little strength or support to our defense. The jury knew from the testimony no bullet was recovered, and the bullet trajectory was not clear enough for the Oregon State Police Crime Lab to even assist finding the bullet.

Moreover, the evidence was clear as to the identification of the alleged shooter, the general position of his body as to the involved doorway, porch and potential victim. This was not a situation where I was arguing the identity of the shooter was unknown and therefore someone else, in another physical location, could and did fire the shot.

In this case, the issue would have had to be to argue the exact direction of the bullet, if that could in fact be determined, somehow showed Mr. Wade fired the gun not directly at the potential victim but mere inches from her as if to scare her; the evidence was unequivocal from the potential witness that the bullet came extremely close to her and that she could feel the bullet pass her; in these circumstances I did not believe a criminalist could and would substantially assist our defense.

Respondent's Exhibit 137, p. 2.

In examining counsel's performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at

690. Here, the record supports a conclusion that counsel's strategic decision not to call a criminalist at trial and to instead argue the issue as a failure of the State to produce evidence (a strategy made with Wade's consent), was within the bounds of reasonable professional assistance. Moreover, Wade cannot demonstrate that the PCR court's determination, that even had counsel hired an expert willing to testify in the vein of Reid's affidavit it would not have impacted or changed the verdict at trial, *i.e.*, that any failure on counsel's part to hire a criminalist did not prejudice Wade's defense, was contrary to or involved an objectively unreasonable application of *Strickland*.

Based on the foregoing, the Court concludes that Wade has failed to meet his heavy burden under AEDPA of demonstrating that the PCR court's denial of this claim, based on its conclusions that trial counsel rendered constitutionally adequate assistance and that Wade was not prejudiced by any failure of counsel to hire a criminalist, was contrary to or involved an unreasonable application of *Strickland v. Washington*.

## RECOMMENDATION

Based on the foregoing, the Amended Petition for Writ of Habeas Corpus [19] should be DENIED, and judgment should enter DISMISSING this case with prejudice.

In addition, the district judge should certify that Wade has not made a substantial showing of the denial of a constitutional

right pursuant to 28 U.S.C. § 2253(c)(2). This case is not appropriate for appellate review.

### SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

### NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 1st day of February, 2016.

Paul Papak
United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION